

# THE ATTORNEY GENERAL

## OF TEXAS

**CRAWFORD C. MARTIN**
**ATTORNEY GENERAL**

AUSTIN, TEXAS 78711

November 27, 1967

Hon. Graves W. Landrum
Vice Chancellor for Adminis-
    tration
Office of the Chancellor
The University of Texas
    System
Austin, Texas

Dear Mr. Landrum:

Opinion No. M-160

Re: Interagency contracts
    between the University
    of Texas and the Coordi-
    nating Board, Texas
    college and university
    system for the utiliza-
    tion of certain data
    processing equipment.

Your request for an opinion reads, in part, as follows:

". . .

"Chapter 325, page 685, 59th Legislature,
1965, R.S., provided for the development and
management of automatic data processing systems
in state agencies in an efficient and economical
manner. The Coordinating Board, Texas College
and University System, and The University of
Texas at Austin established a data communi-
cation system between the two agencies which
was evidenced by an Interagency Contract numbered
IAC (66-67) - 338 and approved by the State Board
of Control on February 15, 1967.

"Subsequently, Interagency Contracts num-
bered IAC (68-69) - 007 and IAC (68-69) - 008
were executed by the parties and duly approved by
the State Board of Control on July 24, 1967, in
furtherance of a more efficient data system and
in conformity with the expressed legislative
intent referred to above. Copies of the three
agreements are enclosed for your information.

-748-

"We understand that payment under the ap-
proved interagency contracts will be deferred
until the validity of such arrangement to fur-
nish data equipment is approved by you. As you
are aware, The University of Texas at Austin
changed from the IBM 1401 System to the IBM
360 Series System in the fall of 1966. The
University has cooperated with other state
agencies in the use of University data process-
ing equipment for official use on a time avail-
able basis. The Coordinating Board has been a
user of the data equipment under the above con-
ditions. After the transition period the
University continued to rent the IBM 1401 in
order to provide continued backup for the new
system and continued use by the Coordinating
Board. The Board was desirous of updating its
equipment for greater capabilities and more ef-
ficient data processing at a lesser cost. Where-
upon, to be compatible with the IBM 360 Series
equipment located at the University, it was
agreed that rental of IBM 360-20 Series equip-
ment to be located at the Coordinating Board
would be the best ultimate arrangement. The
four months' rental on the IBM 1401 was continued
while awaiting the installation of the IBM 360-20.
In furtherance of this arrangement contracts were
executed, orders for the rental of said equip-
ment were issued, and the required approvals
obtained. Under the arrangement The University
of Texas at Austin submitted orders for the
rental of IBM 360-20 equipment, thereby pro-
viding compatibility with the new IBM 360 Series,
particularly the IBM 360-40. It was assumed
that the joint use of equipment, people, serv-
ices and programs to increase efficiency would
be in conformity with Article 4413(32), Vernon's
Civil Statutes, which provides that a state agency
may contract for the furnishing of necessary
technical services, services of employees, and
the services of materials and equipment.

"Based upon the above facts, we would ap-
preciate your advice as to the following ques-
tion:

"Are Board of Control approved Interagency
Contracts numbered IAC (66-67) - 338, IAC (68-69)
- 007 and IAC (68-69) - 008 by and between The
University of Texas at Austin and the Coordi-
nating Board, Texas College and University
System, which provide an arrangement for the
utilization of certain data processing equip-
ment for the benefit of the State of Texas,
valid obligations upon which the State Comp-
troller can issue warrants in payment of such
services?"

Under the contract, the University of Texas as the
performing agent has agreed to provide certain data process-
ing systems and the Coordinating Board, Texas College and
University System as the receiving agent has agreed to pay
to the University of Texas the cost of such services.  The
interagency contracts referred to in your request have been
approved by the State Board of Control.

Section 3 of Article 4413(32), Vernon's Civil Stat-
utes, provides in part:

"Any State agency may enter into and
perform a written agreement or contract
with other agencies of the State for fur-
nishing necessary and authorized special
or technical services, including the serv-
ices of employees, the services of materials,
or the services of equipment.  The actual
cost of rendering the services, or the nearest
estimate of the cost that is practicable,
shall be reimbursed, except in the case of
service rendered in the fields of national
defense or disaster relief, or in coopera-
tive efforts, proposed by the Governor, to

promote the economic development of the
State. . . ." (Emphasis added.)

In construing the provisions of Article 4413(32),
it was stated in Attorney General's Opinion S-138 (1954):

"It should be noted that the three types
of authorized services - services of employees,
services of materials, and services of equip-
ment - are listed disjunctively. Thus, a con-
tract may be for each type separately or for
any combination of the three. Looking to the
complete language of the statute, we think the
term 'furnishing services' is used in the broad
sense of making the particular commodity (labor,
materials or equipment) available for the bene-
fit or use of the receiving agency instead of in
the narrow sense of performance of labor or
useful work. It is our opinion that either
materials or equipment may be furnished without
any further attendant 'services'."

In answer to a similar question, it was held in Attor-
ney General's Opinion C-78 (1963):

"Section 6 of Article 4413(32), Vernon's
Civil Statutes, reads as follows:

"'Payments for such services by a re-
ceiving agency shall be made from the appro-
priation items or accounts of the receiving
agency from which like expenditures would
normally be made, based upon vouchers drawn
for this purpose by the receiving agency pay-
able to the furnishing agency. . . .'

"It is the opinion of this office that
the State Building Commission has the power
and authority under Section 3 of Article 4413(32)
to enter into agreements or contracts with
other State agencies whereby the Commission
performs services for the other agency. The
services rendered by the State Building

Commission would be 'special' or 'technical services' within the meaning of Article 4413(32).

"In regard to the specific problem of the installation of the IBM machine, the Building Commission and the Department of Public Welfare may enter into a contract whereby the Building Commission will draw the plans and specifications for the installation and oversee the actual installation. The Building Commission could subcontract the actual installation work since this building is still under the control and management of the Commission. The contract would be subject to the limitations on interagency contracts and agreements contained in Article 4413(32), and payment would have to be made in accord with Section 6 of Article 4413(32) as quoted above."

Applying the foregoing principles to the interagency contracts in question, we note that the equipment in question is for the joint use of data processing, services and programs to increase efficiency, and thus is in conformity with the provisions of Article 4413(32). You are, therefore, advised that the interagency contracts referred to in your request are valid and constitute valid obligations upon which the Comptroller of Public Accounts may issue warrants in payment of the services rendered pursuant to the contract.

### S U M M A R Y

Under Article 4413(32), Vernon's Civil Statutes, the University of Texas may enter into interagency contracts with the Coordinating Board, College and University System whereby it will furnish the Coordinating Board at cost certain data processing equipment and services.

Yours very truly,

CRAWFORD C. MARTIN
Attorney General of Texas

Hon. Graves W. Landrum, page 6 (M-160)


Prepared by John Reeves
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Hawthorne Phillips, Chairman
Kerns Taylor, Co-Chairman
W. V. Geppert
Charles E. Morris
Alan Minter
Larry Craddock

A. J. CARUBBI, JR.
Staff Legal Assistant